It's number 18-15186, Torres v. First Transit. Mr. Shurker, you're going to kick us off? Yes, Your Honor. Terrific. May it please the Court, Elliot Shurker on behalf of First Transit. Two jurors gave dishonest answers on jury questionnaires to a question whether the jurors had been involved in previous civil litigation. In this circuit, if juror dishonesty is found, and I'd note that the court had moved to the second McDonough prong, actual bias, but beginning by treating the juror dishonesty as what this court said in Perkins, quote, the best initial indicator of whether the juror was impartial. But what happened here is the district court went astray at that point in its analysis and adverted to the voir dire, during which the court— That voir dire, as I understand it, was a blanket voir dire. Yes, sir. How many words of an hour does the record show? It does not. Well, I assume it was— These folks were there. Twenty or so, better. Yes, sir. I don't think there's any question but that these folks were there when the question was asked. Yeah. And the question was— I mean, they weren't in the box, as I understand it. Physically, I assume— The venari had not been called— Correct. I'm assuming they were sitting in the courtroom. To the box. Yes, sir. Yeah. The question was, is there anyone that has been involved in a civil lawsuit that has either negatively or positively about the legal system that you believe would have an effect on your ability to serve as a fair and impartial juror? If so, raise your hand. No hands were raised. Bear in mind that the jury questionnaires also under oath had been filled out before that question was asked, and both of these jurors had answered either not applicable or no to the question whether they'd been involved in prior civil litigation. So isn't the jury questionnaire—isn't there a little—for your side, isn't there a little bit more pinch in the response to the jury questionnaire than the voir dire question? Because the jury questionnaire just says, have you been involved in prior litigation? The answer there, N-A or no. The other one, have you been involved in anything that you think might compromise your ability? They could have honestly answered that no, right? I suppose so. But the predicate to that answer would have been that they lied on the voir dire, on the jury questionnaire. In other words, a juror who said, I've never been involved in prior civil litigation, couldn't answer that question without admitting that they'd lied on the questionnaire. Yeah, so I guess I'm saying that doesn't it really sort of come down to the questionnaire? Absolutely. Which is just as much a part of voir dire as is the voir dire in the courtroom. I'd note that in this case, the district judge said, you all have the jury questionnaire. You don't need to go into any of these questions. I'm going to give you 15 minutes aside for questioning the jury. So as defense counsel said in the affidavit that was submitted to the district court in the post-trial litigation, he relies on jury questionnaires, and particularly so in federal court where, as in this case, the voir dire was extremely limited. The question of actual bias is where this case turns. Now, what we have- The test, I thought, was whether the juror would be, or the person would be subject, challenged for cause. Right. Which is the actual bias question. Yeah, which means the challenge would have been appropriate, but maybe not granted. Correct. Whether it be grounds for challenge for cause. And of course, as in Perkins, part of the analysis at this stage is that the juror was dishonest. In other words, you don't carve out the juror dishonesty and then look at the juror as if the juror had answered honestly and stopped the inquiry there. You start with the juror having been dishonest in the first place because, as this court said in Perkins, that's the best indicator of whether there's actual bias in the first instance. How just sort of practically does the dishonesty that you have established or that you contend that you have established at prong one, how does it sort of color the second prong? I mean, I take that to be your argument that you can't like sort of find dishonesty and then say, okay, now let's set the dishonesty aside and move to close connection. And you're saying that the dishonesty somehow has to filter down into the second prong. What does that look like without sort of preempting the close connection question? I understand, Your Honor. We start with it as an indicator of actual bias. We still have to establish some sort of connection between the dishonesty and the jurors being subject to a challenge for cause. Now, in terms of just looking at it at a macro level, each one of these jurors without getting into the sealed appendix had been on the receiving end, so to speak, had been a defendant in actions brought by large corporations or banks for nonpayment of debt. One of them had a personal bankruptcy. This is a classic David versus Goliath sort of case in which an injured plaintiff is suing a large corporation. The district court disagreed with that characterization, right? I understand, Your Honor, but I respectfully submit that actually misinterprets or misunderstands what happens in a real trial. I'm fairly comfortable in saying that most trial lawyers worth their salt would not want someone who had been on the receiving end of debt collections by large corporations to be on the jury. I understand that. Judge Newsom's asked a key question for me, and that is, if there is automatically at prong two some type of presumption, why would we have to have two prongs, and how does that work out in the real practice of the district court? What does that mean? Does that mean that it seems like we never get to prong two unless there's been a dishonest answer on a material matter at prong one? Correct. And it does bleed over. I think Perkins really is the best case to answer that question, because although the juror in Perkins was indisputably dishonest in answering the questions, the court still looked to whether there would be inferences. The court put it this way. Let me just read what the court said. Given the inferences of actual bias that arise from the fact that Juror Goad felt compelled to misrepresent himself, and in that case, to conceal prior litigation, we conclude that actual bias must be presumed. So we start with a presumption of actual bias. The court quoted a First Circuit decision, certainly when possible non-objectivity, possible non-objectivity, and I stop on that for a good reason. Yes, sir. As I understand it, whether, let's suppose this would all come out at third of one year, whether to grant a motion to strike for cause, for example, would be a discretionary call. Yes, sir. Okay. A judge abuses his discretion when he either misapplies the rule of law or makes an erroneous fact finding. The way I analyze this kind of a problem in that framework is that once there's a falsehood, as in this case, the rule of law sets up a presumption, which means basically a hearing must be held, some means of overcoming the presumption. That's my analysis of it, and if the district judge doesn't do anything, then there's an abuse of discretion, and in this case, denying the motion for due trial. That would be very much like the CARPA case, Your Honor, in which the court ordered that there had to be a hearing, even though the judge in that case ordered the FBI to do an investigation. That's the rule of law that I perceive applies in this discretionary call. I think that's correct, Your Honor. Okay. I think that's correct. That's exactly what the court was saying in Perkins. If you have possible non-objectivity, and you have a juror who lies about a material fact in voir dire, that's enough to, at a bare minimum, get a hearing to determine what the juror was actually thinking and why the juror did what the juror did. But starting with, even in that inquiry, the presumption of actual bias, at that point, it's almost like an ordinary voir dire in challenge for cause, where a juror discloses something so powerful that a reasonable lawyer would make a challenge for cause, and then under inquiry by the court says, well, of course, Your Honor, I could be fair, even after having confessed to some sort of disqualifying bias. And the law, as actually is repeated in Perkins, the law is that a juror's pallid denials of bias are not enough to overcome a valid challenge for cause when that challenge for cause is established on the record. So is it your contention that if at step one, dishonesty gives rise to some sort of presumption of actual bias that, I guess, filters into step two, that then it has sort of like shifted the burden, perhaps, to like disprove close connection or something like that? Now that there's this presumption that attaches, I'm just trying to figure out how this works. If at prong two, does the other side now have the burden of proving that there sort of is no close connection? Because as I read CARPA, we say that close connection, or that the actual bias can be shown either, and I take shown to mean by you, either sort of a smoking gun or close connection. So I just don't understand how the filtering through presumption thing works at prong two. I don't have a clear answer, unfortunately, because the cases don't break it down that fine. But so you don't deny, I guess, that it's your, whatever the presumption thing is doing, that it remains your burden to show close connection at prong two? As I understand the case as much as I would prefer it otherwise, I believe that's still true. Nothing says that it's a burden shifting presumption. So if it, in fact, is your burden to show close connection, why is it that these sort of debt collection type things, aside from David and Goliath, why is it that these debt collection things would be close enough to a personal injury suit? I mean, weren't there jurors who confessed to having been involved in personal injury litigation who you didn't strike? That's correct, Your Honor. So I guess I'm just sort of having a hard time understanding, like, why the close connection standard is met here. Sure. Bear in mind that those jurors told the truth, and that we analyzed this juror, these jurors with a presumption that they do have actual mouths. So that's the first thing that's different. I guess the way to look at it, Your Honor, is if suppose when the question was asked at Wadhir, when that general question was asked at Wadhir, one of these jurors had an attack of conscience, and stood up and said, Your Honor, I lied, I do have this long history of civil litigation, and you have your Perry Mason moment, and the juror tells the truth. I think at that point, a valid challenge for cause would be a foregone conclusion. Part of this is, whether you assert a cause challenge sometimes comes down to litigation trial tactics, right? Sure. You may have a valid cause challenge and not assert it because there are other things about that juror that you think make them passable for you. Or because the next juror is horrible. Sure. Understood. Which is why the test isn't whether it would be granted. The problem, as I see it, is you never know what's going to come out in the examination of the juror. Correct. Yes. So, it affects how the rest of the jurors are seated, whether or not others would be challenged perpetually or whatever the case would be. Of course, you're always looking at the whole veneer and making a decision whether to use any kind of challenge, peremptory or cause, depending upon what might be coming behind. What strikes me, and your co-counsel can answer the question, I don't pay a whole lot of attention in the kind of litigation that was exposed to in these two, in this case, because you don't know what would be developed in an interrogation. There may be something about just the courtroom, or the court experience that would render the juror unfit to serve. Which is why, at a bare minimum under CARPA, a hearing is required to answer all those questions that we cannot answer now because the district court didn't do it. Can I ask you one quick question before you sit down just about the damages aspect of the case? I'll rely on my brief, Your Honor. I'm out of my time. Yeah. Well, I have just one question. I'm sorry. Yes, Your Honor. So, and this is, I guess, a simple yes-no. Is there such a thing as Florida Statute 305? There may be a 305, Your Honor. There was an expert your side put on to say the medical expenses were improperly marked up and pursuant to Florida Statute 305, he kept saying. Off the top of my head, I cannot answer that question. I'd be happy to supply the court with that. Okay. It's fine. It's fine. Just kidding. Thank you. Thank you. Judge Newsom, with your permission, I wouldn't mind being able to ask some questions about damages to the appellees and then follow up on his rebuttal with anything he'd like to say in response to that. Absolutely. All right. Mr. Shahady. Shahady. May it please the court. My name is John Shahady. I represent the plaintiff appellees Juan and Alejandro Torres. To my right is co-counsel and trial counsel, Mark Chandler, and we'll address the main issue with the court regarding the issue of the juror misconduct. The first issue was maybe glossed over a bit, but there was two issues that the district court looked at regarding alleged juror dishonesty. One was the actual language of the questionnaire itself, and then the voir dire language in which counsel spoke about in which it was a two-part prong requesting, one, were you shaped by litigation? Was there litigation in some way? Did it shape your testimony? So the McDonough two prongs . . . Tell us about the juror questionnaire. Did the parties prepare that? Was that a standard document of the court? How did that come about? That was a standard document of the court, and that's provided to . . . I'm going to grant you in light of that, that that was not a very clearly worded question on number 10, which is what I think you're about to tell us, right? Yes. So here the district court presumed falsity with respect to the answer to that question. Had no other choice, did it? Well, yes and no is what they did. They said there was not an indication of dishonesty based on the ambiguity in the question and based on the voir dire question . . . Well, how could the district court make those findings without an evidentiary hearing to determine why the juror gave the answer that the jurors gave? Well, there's no need for an evidentiary hearing in this case. What counsel is talking about and what all the cases talk about is you can't speculate, and the Newell v. Darnell case . . . Did the district court speculate here by adopting some of the plaintiff's arguments that the question was confusing, there wasn't necessarily a dishonest answer? Well . . . In other words, at this point, the district court can't say it's an honest answer. That's clear. Can't necessarily say it's a dishonest answer without knowing more. Right. So the district court simply presumed dishonesty and moved to prong two? For the purposes of the McDonough analysis, yes. Because what they're saying is even if you presume dishonesty, you can't get to the second prong. However, as far as the request for an evidentiary hearing, let's make sure we're clear of the record. 1118 of the local rules allow a juror interview after a juror trial. The defendants didn't do this. Within the 28th day, they filed a motion for a new trial. They didn't until the reply brief. Yes, sir? Are you saying that under Rule 11.1e, they had an obligation to make that motion? No. They didn't have an obligation. They could have, and done a juror interview and determined there was an issue. Well, they have to move the court for leave. For cause. Yes. Yes. But they didn't do that. Is your argument that if they don't make that motion, they lose the point? No. They could have brought that up. Well, I understand. Surely, they could have. Yes. The court could have, on its own initiative, done the thing. Right. They could have. They didn't. They didn't originally request a hearing. What happened was they only requested a new trial. A response was filed to the motion for a new trial, including the new versus Darnell. Then they filed a response. They filed a reply saying, well, we- In fairness, they raised the issue. There was a dishonest answer. Then in your opposition to a new trial, you argued that the question was confusing. It wasn't necessarily a dishonest answer, in fact. You said it also had no connection to any actual bias, right? Yes. That's when they said, well, then let's have a hearing. It seems to me the two key questions are here. The court presumed dishonesty. Was the answer actually dishonest? Second, why? If it was just to avoid embarrassment over having filed a personal bankruptcy and been a judgment debtor in a number of cases, that's one thing. We don't know the motive of the jurors in incorrectly answering question number 10. We don't know if they were confused. There's a lot of things we don't know. Seems to me an evidentiary hearing would have been the easy way to get to all those answers. I wonder if that's what should have happened. Well, and again, the standard is that the trial court abuses, the district court abuses discretion. The new and Darnell analysis, in the analysis that the 11th Circuit is- The district court abuses its discretion if it misapplies the law or makes erroneous facts, right? That's correct. The question is, what does the law require the court to do when faced with this situation? That's correct. The rule of law is- What does the law require the court to do? The rule of law requires to justify a post-trial hearing involving the trial jurors. I understand. Tell us in this case, what did the law require the district court to do? The law required the district court, if it determined, the moving party has shown, it says, and I'm reading it to you, the new versus Darnell. How could the court do that on the naked response to question 10? They must show that it's the moving party's burden to show- I understand that, counsel. What does the law require when a juror tells lies, what does the law require the district court to do? That's the first question. Yes. Is your argument that it doesn't require the court to do anything? What does the court require to do? The court is required to make a determination if there was a dishonesty. How does the court do that? To determine from what they read. Just from the naked language? Their argument is the court looks at the naked language and determines what? That there would not be ground for a challenge for cause? They failed to answer a material question on Baudelaire. I understand that. Is what you're saying is that the district court has to determine from what's presented, the lie basically, whether if unrebutted, would support a challenge for cause? You buy that? That's the second analysis. No, the second analysis . . . I think we're on the same page at all. The district court is faced with these false statements. Yes. The question becomes what must the district judge do? May it simply determine from the false statements whether there would be challenge for cause? No. Then they would go to the second prong of a McDonough analysis. Then the court has to do something, can't accept the statements and say they don't support a challenge for cause. Then they make the analysis to determine that. Okay. Now, the analysis . . . but the court has to look at the other evidence. You're telling me it makes an analysis out of the written answers itself? Yes, and the voir dire, and the complete analysis on Baudelaire. For sake of discussion, let's throw the voir dire out. Okay. Okay. Just . . . the question then becomes what does the court do when faced with these false statements? What's the law required to do? Does it require to hold a hearing or make some kind of inquiry? No, it does not. Does not? Does not. All right. Then your argument is the court simply looks at the responses and decides for itself on that basis of the responses, I suppose, and the claims that issue in the case, whether there would be a challenge for cause? Yes, based on a close connection to the alleged dishonest answers and the issues in the case. How can the court address whether there's a close connection if we don't know why the answer was given the way it was given? Because of what the defendant provided of a litigation history. And there's a number of cases in this district, in the circuit, that explain that exactly. We don't know what those jurors, Baudelaire people, would have said if interrogated about their prior litigation experience, do we? We do not know, no. Okay. But that's speculation on both parts. Are you contending that the motion for new trial should have contained all that? No. It couldn't, because the law wouldn't have allowed Mr. Sherker's firm to interrogate these jurors. So then the question becomes, what does a judge have to do? And the first issue, judges, they're not required to hold an evidentiary hearing. They're not, unless... Then all you've got left is the answers to the falsity and a lawsuit for personal injuries. Yes. That's all that's before the court, do you agree? There is a... They have to make an analysis of a closed case. Is it your point that the lies, the false statements, have to have a bearing on what's going to be litigated? Yes. Okay. And that's not only my opinion. What's your best case for that proposition? There's a number of cases. The Bank Atlantic case. Give me one that says you take the false statements as false, and then you determine whether there's anything in the false statements that would indicate that in this particular piece of litigation, the juror would be biased. Is that right? Yes. And there's two cases, and if I could cite two cases to you, one's the Bank Atlantic case, 11th Circuit case in Bank Atlantic, in which there was a juror that concealed his criminal history, and the court did the same analysis it did here, saying there's a question about dishonesty, but for the purposes of the analysis, they were assuming that the question was dishonest, the answer was dishonest, and they found that there was not a close connection between the interest rate swap allegation in the Bank Atlantic case and the criminal convictions of the defendant. And also, I think almost right on point, Judge, is yours versus Burke, in which the case you were involved with, which is a 2018 case, and I'll read the decision. The jurors allegedly undisclosed bankruptcies, foreclosures, and short sale mortgage transactions, if true, would not demonstrate such a close connection in the mortgage fraud scheme of this case that bias could be presumed. They have to prove, express admission of bias, or such a close connection to the issues at hand that bias can be presumed. They can't speculate it. And in yours versus Burke, that's almost exactly what Procurium, you were a part of that panel, said. There was not a situation where there was a close connection, even though the juror did not disclose bankruptcies, foreclosures, and a short sale mortgage transaction, it didn't demonstrate a close connection to a mortgage fraud scheme, which is much closer than the case here. There's nothing here to show anything dealing with debt collection or foreclosures that have anything to do with a personal injury case. The case is that the defendant's sites deal with very obvious jury discrepancies and errors. Perkins dealt with a defendant who the juror allegedly knew the defendant, and the juror was involved in criminal actions. That was clearly something that was a problem that needed to be addressed through the McDonough analysis. Karpa was, the juror had a felony arrest. And a felony arrest is, per se, a challenge for cause. Those cases are the only cases, really, that the defendants rely on, and they're totally distinguishable here. Here, the three cases that are the best cases for us are Bank Atlantic, New v. Arnell, and U.S. v. Burke. There was an investigation in Karpa. Excuse me? There was an investigation in Karpa. I understand that, but it was, the challenge for cause was obvious because of the felony, the prior felony conviction. I understand that, but if that ended the question, you wouldn't have to have an investigation. And again, this court has held that an investigation is discretionary. The moving party must do more than speculate. He must show clear, strong, substantial, and incontrovertible evidence that a specific non-speculative impropriety has occurred. It's not, the burden's not on the district court to say there's a speculation. It's on the moving party to determine more than speculation. Right now, there's nothing more than speculation. This court, I think, is erroneously putting the burden on the district court, Judge. Because we don't know what an interrogation of the diary persons would have disclosed. And the defendant had the opportunity to do so and did not do it. Just to be clear, the court hasn't done anything. The court's just asking questions. Here's my next question. Sure. Seven times cost of the implant. You have to show that past medicals were reasonable and necessary. Little question the implant was necessary. Why was that reasonable? Doesn't a plaintiff have a duty not to provide whatever provider charges, but only the reasonable cost and pass it along to the tortfeasor? Yes. And the reasonableness is something that the jury is free to decide. What evidence in this record was there that that was a reasonable charge? Both plaintiffs testified that it was reasonable. That the charges were reasonable. They said it was, they can testify as to what was necessary, but not whether the charge was reasonable, can they? Yes, absolutely. Both plaintiffs testified that the charges were reasonable. Can't we just look at this implant issue and say that's not reasonable? Seven times the cost of the retail? If there was a car accident and they were arguing over whether they fair market value a car and they say, well, I bought the car for $80,000 and it was a 72 Chevy, that wouldn't be evidence that that's a reasonable fair market value of the car, would it? The issue, Your Honor, Judge Proctor, is the case law that we cited and the judge cited, the Garrett case and the Placo case, if testimony of the plaintiff is enough to submit it as a jury issue, to understand we're here on the insulated issue of was there any evidence to support the jury verdict? We're not here on sufficiency. We're not here on determining whether the, as a district court judge would determine the weight of the evidence. The standard is was there sufficient evidence for a reasonable juror to find that, right? That's not in front of this court. In front of this court, the sufficiency evidence is no longer an issue. On a new trial, there was no directed verdict requested. There was no J&OV. Is there any evidence? It was a new trial issue. I'm not saying we, okay. So, and really it was an issue for the jury to decide whether it was reasonable or not. It wasn't an issue regarding something that. Well, under that argument, there's never going to be a review of reasonableness then post-verdict. That's not correct. Because it's always going to be an issue for the jury, and that's not the law. Respectfully, that is the law, both the law in the state of Florida and the law in this circuit. Oh, then that means as long as there is some evidence testified to by plaintiff about reasonableness of damage, there could never be any post-verdict review of whether there was sufficient evidence for a reasonable juror to conclude that that was a reasonable cost? That's correct. That's the Garrett case, the Supreme Court case, the Polacco case, and the Walrus case out of the Fourth District saying as long as you have, there was no question about related. Nothing was an issue regarding related. The only question was reasonableness, and the plaintiff's testimony alone in the Supreme Court case in Garrett established reasonableness. There was nothing else needed to be done. The jury was free to determine, and that expert testimony, they can reject it or accept it, so they chose to reject it. So there's nothing in the record, especially at this stage, Your Honors, that would show that the trial court abused discretion in denying the motion for a new trial, and again, with the jury verdict, it's something that's highly deferential, as all of you are aware, and when a motion for a new trial is denied, it's even a higher deferential treatment. It really isn't going to be touched unless the sufficiency of the evidence is not an issue. Any evidence to support a trial court's jury verdict should be sustained, so there really is no basis. I understand your question, but that's really a question for the jury, not a question for review at this stage. So we asked, unless anyone has any other questions, I'd ask that this Court affirm on all basis there's no basis or need for an evidence you're hearing because, and let me be specific, even assuming, we spent a lot of time on the dishonesty link, I don't think that's really necessary because the second part requires a showing of actual bias. Actual bias can be expressed or can be presumed from a close connection to say that- They have to have a ground for a challenge for cause. They have to have a ground for a challenge for cause, and again, they didn't challenge any of the other ones. But a ground for a challenge for cause. Right, and they didn't show anything that would indicate any close connection, and under the three cases I cited . . . How could the defendant do that without interrogating the jurors? It was his opportunity to do it. Well, the court, in the Bank of Atlantic case . . . Your argument is that it's not enough that the jurors gave false statements. The defendant had to interrogate, seek leave of court and interrogate the jurors. Is that . . . No, what I'm saying is it's not the plaintiff's or the trial court's requirement, it's the defendant's requirement. I understand. So therefore, the defendant should have moved the court under the local rule to interrogate the jurors. Or, or properly requested a hearing, which they didn't do. Well, they requested a hearing in the response that's already been covered. They didn't request it. Well, let's assume that's adequate. Excuse me? Let's assume that's adequate. It's adequate that they, in their reply, said they should have had a hearing? Yeah. Yeah. Let's assume that . . . Yeah. In that case, they're still even going to step two. There has been no showing of a close connection between the litigation at hand and the alleged debt collections or bankruptcies. Except that both were litigation. But that . . . Except the false statements had to do with litigation. Had to do with some debts, but it had nothing to do with what was at issue here, a personal injury. Different kinds of litigation, but litigation, nevertheless. Right. And again, we're here on an abuse of discretion standard. I think we've got it. Thank you so much. Thank you. I appreciate your argument. Mr. Shurker, you've got three minutes remaining. Judge Proctor, one quick note on the damages. I refer you to the plaintiff's brief at page thirty, where they make the argument that the plaintiff's testified the expenses were reasonable, and what's most notable about that argument is there's not a single record cite for that proposition. I've read this record. I don't remember the plaintiff's ever saying it was reasonable, and of course, we have the unrebutted expert testimony that it was not, that it was eighty percent, an eighty percent overcharge. On the . . . Just so I'm clear, as a matter of law, you don't dispute counsel's representation that the Florida Supreme Court and the intermediate appellate courts have said, that a plaintiff's testimony alone would be enough to shove it to the jury, but that there's simply no plaintiff's testimony here to . . . I do disagree, Ron. Those cases, which are not cited in his brief, they were cited in the new trial papers. Those cases say that an owner can testify to value, which is true, an owner can testify to value. I suggested saying that the plaintiffs are the owners of their surgery, and can testify to the reasonableness of hospital costs is a bit of a stretch, while there are . . . which is the law in the state of Florida. On the juror issue, I'd refer the court to the First Circuit decision in United States versus French, which is cited in our briefs, which addresses almost every question that's come up during opposing counsel's argument. For example, in that case, the question was, has anybody been involved in court matters in your family? A juror wrote N.A. The juror's son was a marijuana dealer, and had been in jail often, and the juror knew that her son was a marijuana dealer. This was a criminal case. And the court said, this is at page 117 of the opinion, 904 F.3rd of 117. The district court posited that perhaps N.A. meant something other than not applicable, and the government supposes that the juror may not have regarded her son's experiences involving a court matter. Perhaps too, her son's prosecution had left her hostile toward government prosecutors. Each hypothesis is plausible, but insufficiently likely so as to warrant rejecting, without investigation, the claim of juror misconduct as improbable. The court went on to say that the party moving forward . . . What are you asking us to do in particular on the damages? Just, you say we should find that a new trial should have been granted, based upon this? We asked for remitted in the district court. We asked to remit the damages. How does that work at the appellate court on remitted? Because remitted means, as I understand it, they can take the lesser damage determined by the court on remitted, or a new trial would be held. I suppose, Your Honor, the relief would be to reverse the order denying the remitted remitter, and send it back to the district court. The district court presents the plaintiffs with their choice under Florida law as to whether to accept the remitted, or take a new trial on damages. I suppose that would be the appropriate relief. We do ask the court simply to reduce the damages to the only amount supported by the record. That's very clear in our briefs, which is . . . And finally, just real quick, on the future pain and suffering, how do we go about assessing that on this record, and in light of Florida law? Florida law requires the court to look for comparators, and I recognize that the one comparator we were able to find, in a case where liability was admitted, and there was purely non-economic future damages, no future medical expenses, but simply future pain and suffering damages, that $1.3 million under Florida law was excessive. These two awards together are far more than that, and we submit that that's an appropriate matter for the district court to take up on remitted. We're not asking this court to set the number on future damages, but the district court should have been required to grant a remitted. And as to remitted, or you would contend the district court ought to do that in the first instance? On the future number, yes, Your Honor. Thank you. Thank you so much. All right, the case is submitted. We'll move to the second case.